IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


IRINEO GARCIA,

        Plaintiff,

vs.                              Case No. 19-3108-SAC

DAN SCHNURR, et. al.,

        Defendants.


## O R D E R

Plaintiff, pro se, has filed this action alleging violations of his constitutional rights and rights under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, in relation to his incarceration at the Hutchinson Correctional Facility (HCF). Plaintiff brings this case pursuant to 42 U.S.C. § 1983 and the ADA.[1]  This case is before the court for the purposes of screening plaintiff's amended complaint (Doc. No. 21) pursuant to 28 U.S.C. § 1915A.  The court applies the screening standards for a pro se prisoner complaint detailed in the court's previous screening order at Doc. No. 7, pp. 2-3.

---

[1] Title 42 United States Code Section 1983 provides a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . causes to be subjected, any citizen of the United States . . . to the deprivation of by rights, privileges, or immunities secured by the Constitution and laws [of the United States]."

## I. Plaintiff's amended complaint

Plaintiff names the following defendants in the amended complaint: Dan Schnurr, warden at HCF; Misti Kroeker, unit team manager at HCF; Gerald Sheridan, unit team supervisor at HCF; David Gorges, unit team officer at HCF; Deb Lundry, health service administrator at HCF; Tim Mead, director of nursing for Corizon at HCF; and Corizon, health care provider at HCF.

Plaintiff's right leg is amputated below the knee. Plaintiff has a prosthetic leg, but he does not wear it in the shower to protect it from water damage. Plaintiff's claims involve the lack of accommodations, particularly shower accommodations, for plaintiff's condition. Plaintiff also complains of receiving inadequate medical care and of retaliation. He sets out four claims in the amended complaint.

First, plaintiff claims that defendants Schnurr, Kroeker and Sheridan violated plaintiff's Fourteenth Amendment rights when they placed plaintiff in unsafe shower conditions and exposed plaintiff to a substantial risk to his health. Second, plaintiff claims that defendants Schnurr, Kroeker, Sheridan, and Gorges violated plaintiff's Eighth Amendment rights by depriving plaintiff of safe shower facilities. He further claims that defendants Corizon, Lundry and Mead violated plaintiff's Eighth Amendment rights when they changed plaintiff's pain medication from that prescribed by plaintiff's surgeon following knee

2

surgery.  In plaintiff's third count, he asserts a violation of Title II of the ADA by defendants Schnurr, Sheridan and Kroeker. Finally, in the last count, plaintiff asserts that defendants Sheridan, Kroeker, Gorges and Richards, retaliated against plaintiff for using the grievance process in violation of plaintiff's First Amendment rights.

Plaintiff alleges that he was transferred to HCF in March 2015.  Plaintiff asserts that he was placed in the Central Unit which had cells that were not "ADA compatible."  According to plaintiff, the Central Unit had a shower area that was not safe for amputees, in part because the wall was several feet away from the shower head and did not allow for a person to brace himself and shower safely.  It had a seat and there was a handicap rail, but plaintiff alleges that the seat was slick and unsafe when wet. There was, however, a safe shower in cell D1-100 (a cell for disabled inmates) that plaintiff was allowed to use at various times.

Plaintiff claims that defendant Kroeker prohibited plaintiff from using D1-100 to shower.  Plaintiff sent a request form seeking to change this directive, but Kroeker replied that there was no reason plaintiff could not use another shower area which had some accommodations for disabilities. After the denial of his request, plaintiff wrote a grievance on defendant Kroeker in June 2017.

The unit team denied the grievance and defendant Schnurr, the warden, concurred with the unit team's response.

On July 19, 2017, plaintiff was moved to a low-medium unit even though plaintiff was high-medium custody. Plaintiff alleges that on July 26, 2017 he was given a disciplinary write-up by defendant Gorges and, on July 27, 2017, he was ordered to move to a unit ("B-dorm") without facilities for disabled inmates at the behest of defendant Sheridan. Plaintiff tried to convince Sheridan against this, but no change was made in the order. Plaintiff alleges that he was shook down several times after he complained to Sheridan and that on August 1, 2017 Sheridan wrote plaintiff up for a fan plaintiff had had since 2013. Plaintiff spent 61 days in a dorm without accommodations for disabled inmates.

On September 26, 2017, plaintiff was moved back to D-227 which had facilities to accommodate disabled inmates. On April 2, 2018, however, plaintiff was sent back to Central Unit for two disciplinary reports written by defendant April Richards. Plaintiff was placed in a segregation unit without showers safe for plaintiff for 13 days. He did not have a shower for 11 days.

Plaintiff was then moved to D1-112. Plaintiff alleges that defendant Kroeker instructed that he could not shower in cell D1-100, however. On August 10, 2018, plaintiff fell off the shower seat and injured his left leg. The knee was swollen and painful. An MRI showed that plaintiff had a torn ACL. Plaintiff was

scheduled for surgery, but he was still required to shower in the same area.

After surgery, plaintiff did not receive the pain medication that his surgeon recommended.  Plaintiff alleges that he received Tylenol 3 which did not alleviate the pain from the surgery. Plaintiff asserts that he had to rely upon black market pain medication.

II. Count One

Count One alleges a Fourteenth Amendment violation.  The Fourteenth Amendment prohibits states from depriving persons of life, liberty or property without due process of law and from denying persons the equal protection of the laws.  Plaintiff does not allege facts showing that access to safer shower facilities for amputees is a liberty interest protected by the Constitution. See Meachum v. Fano, 427 U.S. 215, 224 (1976)("given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that . . . the conditions of confinement do not otherwise violate the Constitution"); Montez v. McKinna, 208 F.3d 862, 866 (10th Cir. 2000)("there is no federal constitutional right to incarceration in any particular prison or portion of a prison").  He also does not allege that he has been deprived of his property by defendants.

State action can be so arbitrary and oppressive as to violate "substantive due process."  See Seegmiller v. LaVerkin City, 528

F.3d 762, 767 (10th Cir. 2008). "[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." United States v. Salerno, 481 U.S. 739, 746 (1987)(interior quotations and citations omitted). Plaintiff's allegations do not assert the impingement of a fundamental right or governmental conduct which shocks the conscience. Therefore, the court finds that plaintiff has not alleged facts describing a plausible due process violation.[2]

To allege an equal protection violation, plaintiff must state facts indicating that defendants treated him differently than other similarly situated individuals. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Plaintiff does not allege that he was treated differently on the basis of class membership. Plaintiff's claim appears to be that he should have received different treatment than most inmates at HCF because he is an amputee. The Tenth Circuit, however, has joined the opinion of other courts that the Equal Protection Clause does not apply to alleged failures to accommodate a disability. Ragsdell v. Regional Housing Alliance, 603 Fed.Appx. 653, 655 (10th Cir. 2015((citing

---

[2] Plaintiff alludes to being denied a chance to confront his accusers in the disciplinary proceedings. There is no such general right in prison proceedings however. Baxter v. Palmigiano, 425 U.S. 308, 321, 322 & n.5 (1976); Kucera v. Terrell, 214 Fed.Appx. 729, 730 (10th Cir. 2006). Moreover, there is no indication in plaintiff's allegations that the disciplinary proceedings implicated a protected liberty interest. See Harrison v. Morton, 490 Fed.Appx. 988, 932-33 (10th Cir. 2012).

<u>Bd. of Trs. of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 367-68 (2001), <u>Welsh v. Tulsa</u>, 977 F.2d 1415, 1420 (10ᵗʰ Cir. 1992) and <u>Erickson v. Bd. of Govs. of State Colls. & Univs. for Ne. Ill. Univ.</u>, 207 F.3d 945, 949 (7ᵗʰ Cir. 2000)).

For the above-stated reasons, it appears that plaintiff's Fourteenth Amendment claims in Count One are subject to dismissal.

III. <u>Count Two</u>

Count Two alleges a violation of the Eighth Amendment.  In general, a prisoner may demonstrate a violation of the Eighth Amendment with respect to conditions of confinement if he shows that he has been deprived of "the minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 & 834 (1994).  Plaintiff's claims allege a deprivation of personal safety and medical care.

A. <u>Personal safety</u>

Plaintiff's personal safety claims assert that he has been forced to use unsafe shower facilities which caused him to slip and injure his left knee.  The court notes that when plaintiff injured his left knee he was using shower facilities that had a shower seat and a handrail.  Doc. No. 21, ¶¶ 6 and 9.

Plaintiff asserts that the shower conditions even with the seat and handrail were slippery, and that there were insufficient safety precautions to mitigate the danger. The Tenth Circuit has

held that such claims do not describe a violation of the Eighth Amendment, even for an inmate using crutches who had warned prison officials several times of the danger. Reynolds v. Powell, 370 F.3d 1028, 1031-32 (10th Cir. 2004); see also Coleman v. Sweetin, 745 F.3d 756, 764-65 (5th Cir. 2014)(allegation of multiple falls in prison shower by inmate using crutches does not avoid general rule that prison slip and fall incidents are not constitutional violations); Pyles v. Fahim, 771 F.3d 403, 410-11 (7th Cir. 2014)(wet stairs used to access showers, of which there had been complaints, did not constitute a hazardous condition of confinement); Flandro v. Salt Lake County Jail, 53 Fed.Appx. 499 (10th Cir. 2002)(slip and fall on soapy shower floor did not state an Eighth Amendment claim, despite serious injury); Wright v. Eichinger, 2019 WL 6612247 (D. Kan. 12/5/2019)(slip and fall where inmate had repeatedly requested that rubber mats be returned to the shower).

Upon this authority, the court finds that plaintiff's Eighth Amendment personal safety claim is subject to dismissal.

B. Medical care

Plaintiff alleges that defendants Corizon, Deb Lundry and Tim Mead violated plaintiff's Eighth Amendment rights when they changed his pain medication from what plaintiff's surgeon had prescribed. Plaintiff asserts that they acted "with deliberate indifference to prescribed treatment."

8

To state an Eighth Amendment claim for an unconstitutional denial of medical care, plaintiff must allege omissions or acts which are sufficiently harmful to suggest deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 105 (1976). This standard has an objective and a subjective component. Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005)(quoting Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)). The provision of medical care, even if grossly negligent, does not violate the Eighth Amendment unless, judged objectively, it is responding to a sufficiently serious medical need. This means that the medical need "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (interior quotation omitted).

The subjective part of the deliberate indifference test "requires the plaintiff to present evidence" that an official "'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.'" Id., quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994). The Court in Farmer "analogized [the deliberate indifference] standard to criminal recklessness, which makes a person liable when she

consciously disregards a substantial risk of serious harm." Id. at 752.  This may be demonstrated with circumstantial evidence. Id.

A disagreement between an inmate and medical personnel over the course of treatment for pain does not give rise to a deliberate indifference claim.  Morris v. Fallin, 798 Fed.Appx. 261, 270 (10th Cir. 2020)(disagreement over need for foam wedge or egg-crate mattress for acid reflux and orthopedic problems); Suro v. Tiona, 784 Fed.Appx. 566, 570 (10th Cir. 8/15/2019)(denial of traction therapy prescribed for plaintiff where plaintiff received other medical care); Rascon v. Douglas, 718 Fed.Appx. 587, 591 (10th Cir. 2017)(disagreement over pain medication); Burton v. Owens, 511 Fed.Appx. 385, 389-90 (5th Cir. 2013)(substitution of prescription-strength ibuprofen for prescribed Percoset); Gee v. Pacheco, 627 F.3d 1178, 1192 (10th Cir. 2010)(denial of plaintiff's desired medications for headaches and receiving others instead); Hairston v. McGuire, 57 Fed.Appx. 788, 789 (10th Cir. 2003)(complaint that plaintiff's pain medication was too weak and that plaintiff had to pay for it failed to state an Eighth Amendment violation); Barrow v. Clark, 2020 WL 1165846 *4 (D.Kan. 3/11/2020)(denial of Lyrica for pain although it was prescribed by an outside provider); Santamaria v. Oliver, 2015 WL 4124532 *2 (D.Colo. 7/9/2015)(disagreement over medication and treatment for "bad" back pain is not sufficient to allege an Eighth Amendment violation); Harris v. Westchester County Medical Center, 2011 WL

2637429 *3 (S.D.N.Y. 7/6/2011)(disbursing Tylenol instead of
Vicodin for pain); Odom v. Forsythe, 2006 WL 5781574 *2 (E.D.Va.
10/4/2006)(disagreement with doctor over course of treatment for
neck and back pain does not state a claim under the Eighth
Amendment); Cowles v. House, 2006 WL 5781567 *2 (E.D.Va.
10/10/2006)(disagreement as to pain medication – directive that
plaintiff take Motrin – does not rise to deliberate indifference).

This authority leads the court to find that the medical care
part of plaintiff's Eighth Amendment claim is subject to dismissal.

IV. Count Three

The "deliberate refusal of prison officials to accommodate
[an inmate's] disability-related needs in such fundamentals as .
. . hygiene" may constitute a violation of Title II of the ADA.
United States v. Georgia, 546 U.S. 151, 157 (2006).  To establish
a claim under Title II of the ADA, plaintiff must allege that:  1)
he is a qualified individual with a disability; 2) he was excluded
from participation in or denied the benefits of a public entity's
services, programs, or activities; and 3) such exclusion, denial
of benefits, or discrimination was by reason of a disability.
Robertson v. Las Animas County Sheriff's Dept., 500 F.3d 1185,
1193 (10th Cir. 2007).

The proper defendant in a Title II ADA claim is the public
entity itself or an official acting in his or her official capacity
on behalf of the public entity.  Everson v. Leis, 556 F.3d 484,

501 n.7 (6th Cir. 2009); <u>Garcia v. S.U.N.Y. Health Sciences Ctr.</u>, 280 F.3d 98, 107 (2d Cir. 2001); <u>Wilson v. Housing Authority of Silver Lake, Kansas</u>, 2019 WL 2943054 *2 (D.Kan. 5/30/2019).

Plaintiff lists Schnurr, Sheridan and Kroeker as defendants in Count Three. The court shall dismiss any individual capacity claims for damages against them. Plaintiff may wish to amend the complaint to clarify what official capacity claims he is making or whether he wishes to add a public entity as a defendant in Count Three.

V. <u>Count Four</u>

Plaintiff alleges that defendant Sheridan, Kroeker, Gorges and Richards retaliated against plaintiff for filing prison grievances. According to the amended complaint plaintiff filed a prison grievance against defendant Kroeker on or about June 15, 2017 and he later forwarded the grievance to the Secretary of Corrections. Plaintiff was granted an "exception" and moved to a different unit which was below his custody level on July 19, 2017. On July 26, 2017, defendant Gorges gave plaintiff a disciplinary writeup. Plaintiff claims that he overheard defendant Sheridan and defendant Gorges say they did not want plaintiff in "his" cellhouse. The amended complaint does not list any facts concerning the writeup. Plaintiff was found not guilty of the charge on August 7, 2017.

On July 27, 2017, plaintiff was moved to an area ("B-pod") without facilities for disabled inmates. Plaintiff spoke to defendant Sheridan and asked if he could still shower in "D-pod." Sheridan told him to take a shower chair to use in B-pod and that he would put in a work order for railings. Plaintiff alleges that thereafter he was shook down several times. On August 1, 2017, defendant Sheridan gave plaintiff three disciplinary writeups for a fan that plaintiff had had since 2013. Plaintiff was found guilty of all three charges.

On September 26, 2017, plaintiff was moved to a dorm ("D"-227) which had facilities for disabled inmates. Months later, on April 2, 2018, plaintiff was given two disciplinary reports by defendant Richards for undue familiarity and security threat group activities. Plaintiff denies both charges, but he was convicted on each report. Plaintiff was housed in a segregation cell without facilities for disabled inmates for thirteen days. Then, plaintiff was moved to a cell (D1-112) without accommodations for disabled inmates, although he could use a shower area with a seat and handrails. A bulletin was posted saying inmates could not shower in cell D1-100 unless they were housed in that cell.

To state a First Amendment retaliation claim, a plaintiff must allege that: 1) he was engaged in constitutionally protected activity; 2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to

13

engage in the protected activity; and 3) the defendants' adverse actions were substantially motivated by the plaintiff's protected activity. <u>Shero v. City of Grove</u>, 510 F.3d 1196, 1203 (10th Cir. 2007). Specific facts showing retaliation, as opposed to personal beliefs, must be alleged. <u>Fogle v. Pierson</u>, 435 F.3d 1252, 1264 (10th Cir. 2006); <u>Peterson v. Shanks</u>, 149 F.3d 1140, 1144 (10th Cir. 1998); <u>Frazier v. Dubois</u>, 922 F.2d 560, 562 n.1 (10th Cir. 1990)("it is imperative that plaintiff's pleading be factual and not conclusory").

The court shall focus upon the motivation for the alleged adverse actions. A plaintiff may be able to establish that a defendant's actions were substantially motivated by protected activity where the allegations show 1) the defendant was aware of his protected activity; 2) the protected activity complained of the defendant's actions; and 3) the alleged retaliatory act "was in close temporal proximity to the protected activity." <u>Allen v. Avance</u>, 491 Fed.Appx. 1, 5 (10th Cir. 2012)(quoting <u>Gee v. Pacheco</u>, 627 F.3d 1178, 1189 (10th Cir. 2010)). Temporal proximity between protected activity and a challenged prison action, however, does not in itself demonstrate the causal nexus for a retaliation claim. See <u>Leek v. Miller</u>, 698 Fed.Appx. 922, 926 (10th Cir. 2017); <u>Dawson v. Audet</u>, 636 Fed.Appx. 753, 758 (10th Cir. 2016); <u>Strope v. Cummings</u>, 381 Fed.Appx. 878, 883 (10th Cir. 2010); <u>Friedman v. Kennard</u>, 248 Fed.Appx. 918, 922 (10th Cir. 2007).

The Tenth Circuit has noted that disciplinary reports which are sustained in the administrative process may not be the basis for a retaliation claim.

> "[A] prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction." O'Bryant v. Finch, 637 F.3d 1207, 1215 (11th Cir. 2011)(per curiam); see also Hartsfield v. Nichols, 511 F.3d 826, 829 (8th Cir. 2008) ("An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights. However, claims of retaliation fail if the alleged retaliatory conduct violations were issued for the actual violation of a prison rule. Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." (citations omitted)); Lopez v. Roark, 637 F. App'x 520, 521 (10th Cir. 2016) (unpublished) (relying on O'Bryant to reject inmate's retaliation claim); Pinson v. Berkebile, 576 F. App'x 710, 713 (10th Cir. 2014) (unpublished) (same).

Requena v. Roberts, 893 F.3d 1195, 1211 (10th Cir. 2018).

Upon review, the court finds that plaintiff has not stated a plausible claim of retaliation against defendants Sheridan, Kroeker, Gorges and Richards for the following reasons.

Plaintiff does not allege that he filed a grievance on defendant Sheridan. Furthermore, plaintiff was found guilty of the disciplinary charges written by defendant Sheridan.

Plaintiff does not allege that defendant Kroeker brought a disciplinary charge against plaintiff. Plaintiff also does not

allege a retaliatory action by Kroeker which is proximate in time to the grievance plaintiff brought against Kroeker in June 2017. In addition, Kroeker's alleged position regarding plaintiff's use of D1-100 to shower does not appear to have changed because of any grievance filed by plaintiff.

Plaintiff does not allege that he filed a grievance against defendant Gorges or that defendant Gorges was aware of plaintiff's prison grievance when he filed disciplinary charges against plaintiff.  Those charges were brought more than a month after plaintiff filed his grievance.  Nor does plaintiff describe other facts demonstrating that defendant Gorges acted to retaliate against plaintiff by bringing a disciplinary charge.

Finally, plaintiff does not allege that he filed a grievance against defendant Richards or that the disciplinary charges filed by Richards were temporally proximate to plaintiff's grievance. Additionally, plaintiff was found guilty of the charges made by Richards.

VI. Conclusion

In conclusion, the court finds that plaintiff's claims in Counts One, Two and Four are subject to dismissal and that plaintiff's claims against defendants in their individual capacity in Count Three are also subject to dismissal.  The court directs that plaintiff shall have time until July 15, 2021 to either show cause why these claims should not be dismissed or file a second

16

amended complaint which corrects the deficiencies found in the amended complaint.   Plaintiff may also wish to file a second amended complaint to clarify any official capacity claims he wishes to make in Count Three.   An amended complaint should be printed on forms supplied by the Clerk of the Court which may be supplemented. Failure to respond to this order may result in the dismissal of plaintiff's claims in Counts One, Two and Four.

   **IT IS SO ORDERED.**

   Dated this 14th day of June 2021, at Topeka, Kansas.


                    s/Sam A. Crow_____
                    U.S. District Senior Judge