IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IRINEO GARCIA,

          Plaintiff,

v.                                                                Case No. 19-3108-DDC-TJJ

DAN SCHNURR, et al.

          Defendants.

_____

## MEMORANDUM AND ORDER

Plaintiff Irineo Garcia was incarcerated at the Hutchinson Correctional Facility (HCF). His right leg is amputated below the knee, so he uses a prosthetic leg.  To protect the prosthetic from water damage, plaintiff removes it before showering.  And, to shower safely, plaintiff requires an accessible, seated shower.  But defendants, who are officials at HCF, allegedly denied plaintiff an accessible shower.  Proceeding pro se,[1] plaintiff brings claims for disability discrimination under Title II of the Americans with Disabilities Act (ADA), as amended,[2] and for Equal Protection clause violations under 42 U.S.C. § 1983.  Defendants move to dismiss plaintiff's equal protection claim because, they argue, that claim is time-barred and plaintiff failed to exhaust his administrative remedies for that claim, as the Prison Litigation Reform Act requires.  *See* Doc. 42.  The court agrees with defendants' second argument.  Plaintiff failed to

---

[1] Because plaintiff appears pro se, the court construes his filings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  But the court can't serve as a pro se plaintiff's advocate.  *See id.*

[2] Plaintiff asserts a claim under the ADA.  *See* Doc. 21 at 16–17 (Am. Compl. ¶¶ 111–13).  The court construes the action as one under the ADA, as amended by the ADA Amendments Act of 2008 (ADAAA), and relies on that governing version of the ADA when ruling defendants' motion.  *See Skerce v. Torgeson Elec. Co.*, 852 F. App'x 357, 361–62 (10th Cir. 2021) (discussing *Adair v. City of Muskogee*, 823 F.3d 1297, 1304 (10th Cir. 2016)).

exhaust his administrative remedies.  Because that failure is dispositive of this claim, the court dismisses plaintiff's equal protection claim—but without prejudice.  The court explains this ruling, below.

## I.    Background

The court draws the following relevant facts from the Amended Complaint (Doc. 21) and Addendum of Facts (Doc. 25).  As it must at this stage, the court accepts plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [him], and draw[s] all reasonable inferences from the facts" in his favor.  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

During this case's relevant period, plaintiff was incarcerated at the Hutchinson Correctional Facility (HCF) in Hutchinson, Kansas.  Doc. 21 at 1, 3 (Am. Compl. ¶¶ A.1, B.4).  Because his right leg was amputated below the knee several years before his incarceration, *id.* at 3 (Am. Compl. ¶ B.1), plaintiff requires accessible showers and toilets that accommodate his disability, *id.* at 2 (Am. Compl. ¶ B.01).  But, plaintiff alleges, some of the accessible showers at HCF were "not safe for amputees."  *Id.* at 3 (Am. Compl. ¶ B.6).  Indeed, plaintiff slipped once while using these allegedly unsafe showers.  *See id.* at 4 (Am. Compl. ¶ B.9).  So, prison officials allowed plaintiff to shower in an accessible cell, D1-100, where he could shower safely.  *Id.* (Am. Compl. ¶ B.10).  And some time later, prison officials moved plaintiff into cell D1-100 full time.  *See id.* (Am. Compl. ¶ B.12).  Plaintiff shared cell D1-100 with Mr. Nathan Medlen, who's white and whose leg also is amputated below the knee.  Doc. 25 at 1 (Addendum of Facts ¶¶ 101–03).  But that arrangement didn't last long.  On February 18, 2016, prison officials moved plaintiff out of cell D1-100 and moved him into allegedly "non-(ADA) compatible facilities[.]"  Doc. 21 at 4 (Am. Compl. ¶ B.12).

Over the next year and a half, prison officials frequently moved plaintiff back and forth between accessible and allegedly inaccessible cells. *See id.* at 4–5 (Am. Compl. ¶ B.12). While some prison officials still allowed plaintiff to shower in cell D1-100, that changed in June 2017, when defendant Misti Kroeker took over as manager of the D cell block. *See id.* at 5 (Am. Compl. ¶ B.13). Plaintiff alleges that Ms. Kroeker wouldn't let him use the shower in cell D1-100. *Id.* Plaintiff alleges he made multiple requests to use an accessible shower, which were denied. *See id.* at 5–6 (Am. Compl. ¶¶ 14–17). He then filed a grievance and appealed it all the way to the Warden of HCF—defendant Dan Schnurr—and the Secretary of Corrections. *See id.* at 6–7 (Am. Compl. ¶¶ 18–24); *see also* Doc. 43-1 at 1–10 (Grievance Forms and Responses).[3] While the Secretary of Corrections recommended that officials work with plaintiff "to find a solution that accommodates his disability[,]" Doc. 43-1 at 3, apparently they didn't. Plaintiff alleges that certain prison officials, including defendant Gerald Sheridan, began retaliating against him for the grievance he had filed. *See* Doc. 21 at 7–8, 9 (Am. Compl. ¶¶ 27, 30–32, 43). Plaintiff filed another grievance about that alleged retaliation and again appealed that grievance up the chain of command. *See* Doc. 43-1 at 11–22. From that point on, plaintiff showered in allegedly inaccessible and unsafe facilities. *See* Doc. 21 at 6, 7, 8–9, 10, 12 (Am. Compl. ¶¶ B.17, B.29–30, B.38, B.47–49, B.62). And then, in August 2018, plaintiff slipped and fell in the shower, tearing his ACL. *Id.* at 11–12 (Am. Compl. ¶¶ 55, 61).

Plaintiff alleges that Mr. "Nathan Medlen was not forced to move or shower outside cell D1-100 without handicap facilities." Doc. 25 at 1 (Addendum of Facts ¶ 106). He further

---

[3]     The court references these documents outside the Amended Complaint, but it doesn't convert the Motion to Dismiss into a Motion for Summary Judgment. Plaintiff references these documents in his Complaint, defendants attach those documents to their Motion to Dismiss, and plaintiff doesn't dispute those documents' authenticity. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (explaining that district courts may consider documents outside the Complaint in those circumstances without converting a Rule 12(b)(6) dismissal motion into a summary judgment motion).

alleges that prison officials honored Mr. Medlen's requests to use accessible facilities even though they denied plaintiff's similar requests. *Id.* (Addendum of Facts ¶ 105). Plaintiff alleges that "the only difference between" he and Mr. Medlen is that Mr. Medlen is "a white inmate" and plaintiff is a "[H]ispanic inmate." *Id.* at 2 (Addendum of Facts ¶ 109).

Plaintiff filed this lawsuit on June 14, 2019. *See* Doc. 1. Several things have happened since then, including screening of the Complaint by our court, a Show Cause Order, dismissal of the Complaint, a trip to the Circuit and back, an Amended Complaint, another screening, an Addendum of Facts, and finally a partial dismissal of the Amended Complaint. The upshot: two claims now remain. The first is a Title II ADA claim that plaintiff has asserted from this case's inception. That claim is against defendant Schnurr (the HCF Warden) in his official capacity. The second claim is a § 1983 equal protection claim. The facts alleged to support that claim— about Mr. Medlen and differential treatment based on race—are much newer. Plaintiff didn't allege those facts until his Addendum of Facts (Doc. 25), which the court treated as a motion to amend, and granted. *See* Doc. 28 ("The facts labelled as #101-111 shall be considered part of the amended complaint[.]"). Plaintiff asserts his equal protection claim against defendants Schnurr, Kroeker, and Sheridan in their individual capacities.

The three individual defendants move to dismiss the § 1983 equal protection claim. So, plaintiff's ADA claim will proceed. The court now turns to defendants' arguments for dismissal of the § 1983 claim, beginning with the governing legal standard.

## II.    Legal Standard

Fed. R. Civ. P. 12(b)(6) allows a party to move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. Analysis

Defendants raise two arguments why the court should dismiss plaintiff's equal protection claim: (1) the claim is time-barred because it falls outside the two-year statute of limitations for § 1983 claims; and (2) plaintiff failed to exhaust this claim or its supporting facts in his administrative grievances, failing the exhaustion requirements of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). The court agrees on the second point. Plaintiff failed to exhaust his equal protection claim. Because that failure is dispositive, the court won't address whether plaintiff's claim is time-barred.[4]

---

[4]   The parties' briefs focus heavily on (1) when plaintiff's equal protection claim accrued, (2) whether plaintiff can invoke the continuing violation doctrine to overcome any applicable time bar, and

The PLRA is a federal law defining how and when incarcerated individuals may raise federal civil rights claims.  The PLRA mandates aggrieved inmates to exhaust "[a]ll available remedies" before filing lawsuits under federal law.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (quotation cleaned up).  Specifically, the PLRA bars inmates from bringing actions about "prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This requirement is broad in scope, as it "applies to all inmate suits about prison life[.]"  *Porter*, 534 U.S. at 532.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

---

(3) whether plaintiff's amendments alleging differential racial treatment relate back to his original Complaint.  For efficiency, the court bypasses those issues and focuses instead solely on the more straightforward—and dispositive—exhaustion issue.  *Cf. Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (cautioning district courts to dismiss based on statute of limitations "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements").  For what it's worth, the court clarifies two things based on a recent decision from our Circuit, which the Circuit published after the parties had completed the briefing on the Motion to Dismiss.

*First*, and contrary to defendants' arguments, our Circuit recently held that "the continuing violation doctrine . . . is available to a § 1983 litigant[.]"  *Herrera v. City of Espanola*, 32 F.4th 980, 994 (10th Cir. 2022); *see also id.* at 993 (explaining that the continuing violation doctrine, developed in the Title VII hostile work environment context, "applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that *collectively constitute one unlawful act*," and at least one of those separate acts occurred within the limitations period (quotation cleaned up)).

*Second*, plaintiff's allegation that the differential treatment is ongoing also implicates the related—but distinct—repeated violation doctrine.  That doctrine "stands for the straightforward proposition that discrete § 1983 violations occurring within the statute of limitations are actionable, even if claims for prior, similar violations are time barred."  *Id.* at 995; *see also id.* at 996 (considering whether repeated violation doctrine allowed plaintiffs to overcome time bar even though they "did not refer to the repeated violation doctrine by name" because a "careful review of their argument . . . reveal[ed] they argued it in substance").  The court expresses no opinion whether plaintiff's claim is time-barred, and, if it is, whether either of these doctrines overcomes that time bar.

Here, defendants don't dispute that plaintiff properly used HCF'S administrative grievance process.  Instead, they argue that plaintiff's grievances mentioned nothing about differential treatment with similarly situated individuals based on race.  They're right.  None of plaintiff's grievances and appeals mentioned any of the allegations supporting his § 1983 claim: (1) that he and Mr. Medlen both required accessible showers; (2) that prison officials honored Mr. Medlen's restrictions but not plaintiff's; and (3) the only reason for this differential treatment was because Mr. Medlen is white and plaintiff is Hispanic.  *See generally* Doc. 43-1. Instead, plaintiff's grievances and appeals focused more narrowly on prison officials denying him access to the shower in cell D1-100, the cell where officials previously had allowed him to shower to accommodate his disability.  *See, e.g.*, *id.* at 5, 9–10, 12.  And, in another fully appealed grievance, plaintiff complained that specific officers were retaliating against him for his first grievance about the showers.  *See id.* at 11–22.  That grievance also says nothing about racial discrimination or differential treatment with similarly situated individuals.

While plaintiff's equal protection claim spins off from facts about the inaccessible showers, the claim's focus is differential treatment based on race.[5]  Even liberally construed, plaintiff's grievances don't mention racial discrimination or prison officials treating plaintiff differently from other individuals.  Thus, plaintiff hasn't exhausted his administrative remedies for his § 1983 equal protection claim.  *See Smith v. Rudicel*, 123 F. App'x 906, 907 (10th Cir. 2005) (dismissing § 1983 claim for failure to exhaust because plaintiff "failed to allege [in his grievances] the racial basis that his § 1983 claim now entails").  As our Circuit has noted, "a

---

[5]       Plaintiff also invokes a "class of one" equal protection theory.  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing "class of one" equal protection claims, "where the plaintiff alleges that [ ]he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" (internal quotations omitted)).  But, again, nothing about plaintiff's grievances references any kind of differential treatment from others similarly situated.  So, that theory can't overcome plaintiff's exhaustion failure for his equal protection claim.

primary purpose of § 1997e(a) is to foster resolution of claims by providing prison officials with notice and an opportunity to respond with corrective action." *Id.* at 908. So, it's "inappropriate to allow a plaintiff to bring new claims at this stage [*i.e.*, litigation], even where similar claims have been fully exhausted." *Id.*

Conceding that he didn't exhaust his administrative remedies, plaintiff argues that prison officials prevented him from including his claim's racial component in his grievance. As our Circuit has recognized, the "plain language of the PLRA requires that prisoners exhaust only *available* remedies." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). And so, "when a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process" is "no longer . . . 'available'" within the PLRA's meaning. *Id.* at 1252–53; *see also Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.").

In his response to defendants' motion, plaintiff contends that when he wrote a grievance form about prison officials treating him differently "because [he] was Mexican, the officer handed it back and said he would not turn it in." Doc. 51 at 5. Plaintiff also asserts the unnamed officer told him that he could get written up for "insubordination or disrespect to officers or other employees." *Id.* (emphasis omitted). Plaintiff suggests he didn't press the issue further because he feared retaliation from defendants, who "are all white." *See id.* ("I put enough info on being treated differently, I wasn't trying to litigate the grievance, all I wanted was to be safe."). Plaintiff doesn't mention when this alleged retaliation threat occurred. But, as discussed above, plaintiff has filed grievances before. He filed the grievance about the inaccessible and unsafe

showers. And, significantly, he filed a grievance about specific officers retaliating against him, allegedly because of the first grievance. So, plaintiff has used the grievance process successfully despite potential retaliation. That fact counsels against excusing plaintiff's failure to exhaust his administrative remedies. *Cf. May v. Segovia*, 929 F.3d 1223, 1235 (10th Cir. 2019) (rejecting plaintiff's argument that administrative remedies weren't available because he failed to explain "how the grievance process was so broken as to dissuade him from filing his due process grievance but not enough to dissuade him from filing twenty-nine other grievances in the same time period"); *Kee v. Raemisch*, 793 F. App'x 726, 736 (10th Cir. 2019) (holding that plaintiff couldn't invoke exhaustion exception based on alleged retaliation because "the sheer number of [other] grievances [that plaintiff had filed] belies such a claim"). The court won't excuse plaintiff from failing to exhaust his administrative remedies for his equal protection claim.

## IV.      Conclusion

In sum, plaintiff has failed to exhaust his administrative remedies for his § 1983 equal protection claim. The court thus dismisses that claim without prejudice. *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice.").

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 42) is granted. Plaintiff's § 1983 equal protection claim is dismissed without prejudice. Defendants Kroeker and Sheridan are dismissed from this lawsuit. And, defendant Schnurr is dismissed in his individual capacity.

**IT IS SO ORDERED.**

**Dated this 6th day of June, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
