**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

IRINEO GARCIA,

            **Plaintiff,**

v.                                                                      **Case No. 19-3108-DDC-TJJ**

DAN SCHNURR,

            **Defendant.**

---

## MEMORANDUM AND ORDER

Plaintiff Irineo Garcia, proceeding pro se,[1] sued officials at Hutchinson Correctional

Facility (HCF) after they allegedly denied him access to an accessible shower. Doc. 1. Plaintiff

sued Dan Schnurr, HCF Warden, in his official and individual capacities for disability

discrimination under Title II of the American with Disabilities Act (ADA)[2] and for Equal

Protection Clause violations under 42 U.S.C. § 1983. *Id.* After an earlier order, just one claim—

disability discrimination under Title II of the ADA—remains against defendant Schnurr, sued

solely in his official capacity. *See* Doc. 61 at 9 (dismissing defendant Schnurr in his personal

capacity and plaintiff's Fourteenth and Eighth Amendment claims); Doc. 70 at 7 (Pretrial Order

¶ 4.a.).

---

[1]        Because plaintiff appears pro se, the court construes his filings liberally and holds them "to a less
stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th
Cir. 1991). But the court can't serve as a pro se plaintiff's advocate. *See id.*

[2]        Plaintiff asserts a claim under the ADA. *See* Doc. 70 at 7 (Pretrial Order ¶ 4.a.). The court
construes the action as one under the ADA, as amended by the ADA Amendments Act of 2008
(ADAAA), and relies on that governing version of the ADA when ruling defendant's motion. *See Skerce
v. Torgeson Elec. Co.*, 852 F. App'x 357, 361–62 (10th Cir. 2021) (discussing *Adair v. City of Muskogee*,
823 F.3d 1297, 1304 (10th Cir. 2016)).

Defendant Schnurr now moves for summary judgment under Fed. R. Civ. P. 56 against that one remaining claim.  Before the court is defendant's Motion for Summary Judgment (Doc. 71) and his Memorandum in Support (Doc. 72).  Plaintiff has responded (Doc. 74) and defendant has replied (Doc. 75).  Plaintiff also filed a "Pro-Se Reply" (Doc. 76) which the court filed as a Surreply.  For reasons explained below, the court grants in part defendant's Motion for Summary Judgment.

## I.    Background

The following facts either are stipulated in the Pretrial Order (Doc. 70), uncontroverted or, where controverted, stated in the light most favorable to plaintiff, the party opposing summary judgment.  *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

The Kansas Department of Corrections (KDOC) has incarcerated plaintiff in various facilities since 2013.  Doc. 70 at 2 (Pretrial Order ¶ 2.a.v.).  Currently, plaintiff resides at Larned Correctional Mental Health Facility (LCMHF) in Larned, Kansas.  *Id.* at 2 (Pretrial Order ¶ 2.a.i.).  He has lived at LCMHF since KDOC transferred him there on May 28, 2022.  *Id.* at 2, 4 (Pretrial Order ¶ 2.a.i., 2.a.xxi.).

The allegations that give rise to plaintiff's claim occurred while he was incarcerated at HCF from 2017 to 2019.  *Id.* at 3 (Pretrial Order ¶ 2.a.xii.).  At all times during his incarceration, plaintiff had a below the knee amputation on his right leg.  *Id.* at 2 (Pretrial Order ¶ 2.a.vi.).  He wears a prosthetic leg.  *Id.*  Due to this disability, plaintiff contends that he requires an accommodation to sit while he showers.  *See* Doc. 74.

### *Showers at HCF*

In 2015, KDOC transferred plaintiff to HCF.  Doc. 70 at 2 (Pretrial Order ¶ 2.a.vi.).  During his time at HCF, plaintiff resided in three areas—"Central Unit general population,"

"East Unit general population," and "Central Unit administrative segregation." *Id.* at 3–4 (Pretrial Order ¶¶ 2.a.x.–xvi.).  At HCF, the Central Unit houses inmates classified as "high medium" custody level and the East Unit houses inmates classified as "low medium" custody level.  Doc. 72-4 at 1–2 (Schnurr Aff. ¶ 5).  Plaintiff resided mainly in the Central Unit general population or East Unit general population depending on his custody level status which changed throughout his time at HCF.  *Id.* at 5 (KDOC Custody Classification Display).  On April 20, 2017, plaintiff pleaded guilty to a disciplinary charge for fighting, and then spent the next 18 days in Central Unit administrative segregation.  *Id.* at 2 (Schnurr Aff. ¶¶ 7–8).

While housed in the East Unit general population, plaintiff used a "shower chair."  Doc. 70 at 3–4 (Pretrial Order ¶ 2.a.xvi.).[3]  While housed in the Central Unit general population, plaintiff used a "handicap shower area" with a bench seat.  *Id.* at 3 (Pretrial Order ¶ 2.a.xii.). When he was placed in administrative segregation, plaintiff alleges that he couldn't shower at all because defendant failed to provide him with an accessible shower for his disability.  The parties don't dispute the shower setups in Central Unit general population or administrative segregation. They only dispute whether these showers violated the ADA.

Plaintiff was housed in the Central Unit general population from May 8, 2017 to July 19, 2017 and from April 13, 2018 to December 7, 2018, among other times.  *Id.* at 3 (Pretrial Order ¶ 2.a.xii.).  In the Central Unit, plaintiff used a "handicap shower area."  *Id.*  This shower had a bench seat, handrails, and a shower box located lower on the wall adjacent to the shower bench. Doc. 72-3 at 1 (Brown Aff. ¶ 3); *see also* Doc. 72-5 at 4 (Garcia Dep. 31:4–25).  This setup allowed plaintiff to walk into the shower, sit down, remove his prosthetic and shower while

---

[3]      Plaintiff was housed in the East Unit general population from July 19, 2017 to April 2, 2018, among other times.  *Id.* at 3–4 (Pretrial Order ¶ 2.a.xvi.).

seated.  Doc. 72-5 at 4 (Garcia Dep. 31:4–25).  Still, plaintiff complained that this shower was unsafe due to his disability.  Doc. 70 at 3 (Pretrial Order ¶ 2.a.xiii.).  Plaintiff asserts that on August 10, 2018, he fell while using the Central Unit handicap shower area, but he never filed a personal injury claim form.  Doc. 72-5 at 53–54 (Garcia Dep. 165:22–166:2).

After receiving disciplinary charges, plaintiff was placed in the Central Unit's administrative segregation from April 20, 2017 to May 8, 2017.  Doc. 70 at 3 (Pretrial Order ¶ 2.a.x.).  Administrative segregation isn't equipped with a shower chair or handicap shower area. So, while housed there, HCF staff offered plaintiff a plastic chair to use in the shower, but he declined to use it because it wasn't a "shower chair."  *Id.* (Pretrial Order ¶ 2.a.xi.); Doc. 72-5 at 42 (Garcia Dep. 144:20–25).  The showers in administrative segregation didn't have handrails. Doc. 70 at 3 (Pretrial Order ¶ 2.a.xi.).  And the staff operated the shower controls from outside of the showers.  *Id.*  Instead of using this shower option, plaintiff washed himself in the sink in his cell—what he called taking "bird baths"—during his 18 days in administrative segregation.  *Id.* (Pretrial Order ¶¶ 2.a.xi., 2.a.xiii.).

Overall, plaintiff preferred the "shower chair" in the East Unit general population over his other two shower set-ups at HCF.  He submitted a complaint asking for an accommodation while he had to shower in the Central Unit general population.  Doc. 70 at 3 (Pretrial Order ¶ 2.a.xiii.); *see also* Doc. 72-6 at 9–10.  That complaint also aired his grievances over his 18 days subject to the administrative segregation showers.  *Id.*

### Plaintiff's Complaints and HCF's Responses

About a month after his shower experience—or, more accurately, the absence of showers—in administrative segregation plaintiff submitted a complaint.  On June 13, 2017,

plaintiff submitted a Form 9 to HCF official Misti Kroeker.[4]  *Id.* (Pretrial Order ¶ 2.a.xiii.).  This complaint consisted of two distinct components.  First, plaintiff requested to use a handicap shower.  *Id.*  Second, he alleged that he went 18 days without the ability to shower while in administrative segregation—instead of showering, he took "bird baths" in the sink in his cell to wash himself.  *Id.*

After receiving plaintiff's Form 9, Ms. Kroeker consulted with Tim Mead, HCF's Director of Nursing, and asked whether there was any reason Garcia couldn't use the "handicap shower area in D1 cellhouse."  Doc. 72-1 at 1–2 (Kroeker Aff. ¶ 3) (D1 cellhouse *a.k.a.* Central Unit general population).  Mr. Mead responded that there wasn't a reason.  *Id.*; *see also id.* at 4. She also looked at plaintiff's disability accommodations in KDOC's database and found that plaintiff "had no medical restrictions or accommodations requiring a specific shower chair" or mandating "a particular shower."  *Id.* at 2 (Kroeker Aff. ¶ 4).  The next day, June 14, 2017, Ms. Kroeker responded to plaintiff's Form 9—"There is NO reason you cannot shower using the handicap shower in the D1 shower area.  There is no reason to transfer you."  Doc. 70 at 3 (Pretrial Order ¶ 2.a.xiv.).

Then, on June 15, 2017, plaintiff submitted a formal grievance about the shower facilities at HCF.  *Id.* (Pretrial Order ¶ 2.a.xv.).  HCF denied his grievance.  *Id.*  Plaintiff appealed this denial to defendant, the Warden.  *Id.*  On June 30, 2017, defendant responded to plaintiff's grievance.  *Id.*  Defendant responded—"I have read [plaintiff's grievance] and concur with the Unit Team response."  Doc. 72-6 at 4.  Plaintiff then appealed to the Secretary of Corrections. Doc. 70 at 3 (Pretrial Order ¶ 2.a.xv.).  And, on August 24, 2017, a Secretary of Corrections

---

[4]      KDOC employed Ms. Kroeker as the Unit Team Manager "over D Cellhouse" from about 2015 to 2018.  Doc. 72-1 at 1 (Kroeker Aff. ¶ 1).  Her duties in that role included addressing inmate requests and issues.  *Id.*

Designee responded to plaintiff's appeal—"It appears that with the offender's amputation and left leg injuries he would require seated showering.  Recommended working with the offender to find a solution that accommodates his disability."  *Id.*; *see also* Doc. 72-6 at 3.

About a year later, plaintiff filed a second grievance—in it, he alleged that HCF staff had retaliated against him for filing the first grievance about the showers.  Doc. 70 at 4 (Pretrial Order ¶ 2.a.xvii.).

### Plaintiff's Written Medical Accommodations on File with KDOC

In 2006 and 2015, plaintiff had two separate knee surgeries on his left leg.  *Id.* at 2 (Pretrial Order ¶ 2.a.vii.).  Dr. Kenneth Jansson performed both of them.  *Id.*  On April 18, 2016, Dr. Jansson wrote in plaintiff's medical record that plaintiff "can do machines and start straight ahead running/jogging.  He will need to avoid sports and jumping.  He is fully released today at MMI."  *Id.* (Pretrial Order ¶ 2.a.viii.).  Dr. Jansson didn't issue plaintiff any written medical restrictions or accommodations related to shower use.  *Id.*  Plaintiff's written medical accommodations included that KDOC should provide him with a "bottom bunk and bottom run of cells."  *Id.* at 3 (Pretrial Order ¶ 2.a.ix.).

In 2019, plaintiff had surgery on his left ACL with Dr. Erik Severud; and in 2021, he had another surgery on his left ACL with Dr. Jansson.  *Id.* at 4 (Pretrial Order ¶¶ 2.a.xviii.–2.a.xix.).  Following the 2021 surgery, Dr. Jansson recorded in plaintiff's medical record that plaintiff would "benefit from having a shower chair due to his right leg prosthesis and with his left leg recovering from surgery."  *Id.* (Pretrial Order ¶ 2.a.xx.).

## II.   Legal Standard

Summary judgment is appropriate when the moving party demonstrates that "no genuine dispute" exists about "any material fact" and that it is "entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(a).  When it applies this standard, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).  "An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense."  *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'"  *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).  To meet this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'"  *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'"  *Id.* (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49.  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler*, 144 F.3d at 671 (citing *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992)).  "Unsubstantiated allegations carry no probative weight in summary judgment proceedings."  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Phillips v. Calhoun*,

956 F.2d 949, 951 n.3 (10th Cir. 1992)).  To survive summary judgment, the non-moving party's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* (citing *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999)).

The federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327.  To the contrary, it is an important procedure "designed 'to secure the just, speedy[,] and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

### III.   Analysis

Plaintiff seeks declaratory relief; an injunction ordering defendant "to ensure that staff adheres to the proper Code of Ethics, and that Administrators actually investigate Constitutional Violation claims;" compensatory damages; punitive damages; treble damages; and costs.  Doc. 70 at 9 (Pretrial Order ¶ 5).[5]

First, the court explains why plaintiff's injunctive claims are moot.  Then, the court addresses a preliminary issue before reaching the merits of plaintiff's damages claims—that is, what types of Title II claims plaintiff can use to recover monetary damages.  Last, the court assesses whether Eleventh Amendment immunity applies to bar plaintiff's Title II claim for damages.

### A.  Plaintiff's injunctive relief claims are moot.

Plaintiff seeks an injunction ordering HCF staff to take various measures to address alleged problems with HCF facilities.  Doc. 70 at 9 (Pretrial Order ¶ 5 (citing Doc. 21 at 18 (Pl.'s First Amend. Compl. ¶ 123))).  Defendant argues that plaintiff's requests for injunctive relief are moot because plaintiff has moved to a different facility (Larned Correctional Mental Health

---

[5]     The Supreme Court has held that punitive damages aren't available as relief under Title II of the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189–90 (2002).  So, the court only addresses available relief— injunctive and compensatory damages.

Facility), and plaintiff concedes that the showers at LCMHF comply with ADA requirements. The court agrees with defendant's mootness argument.

Plaintiff's requested injunctive relief falls outside of the scope of the court's Article III power to decide "'live, concrete' cases or controversies." *Bell v. English*, No. 18-3206-SAC, 2019 WL 174982, at *3 (D. Kan. Jan. 11, 2019) (quoting *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010)). His request for an injunction is moot because the relief he seeks no longer addresses the injury he alleges, *i.e.*, a plaintiff can't seek prospective relief (change the way you operate your prison) to address past harms. *See id.* ("an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement") (collecting Tenth Circuit cases holding the same). Because plaintiff is no longer incarcerated at HCF, his claims for injunctive relief are moot. Next, the court takes up plaintiff's remaining damages claim.

**B. Can plaintiff pursue compensatory damages for a reasonable accommodation claim—without showing intentional discrimination—under the ADA?**

Defendant first urges the court to grant summary judgment based on the premise that plaintiff cannot recover compensatory damages under Title II of the ADA without establishing intentional discrimination. To support this assertion, defendant cites an unpublished Tenth Circuit decision, *Marshall v. Wyo. Dep't of Corr.*, 592 F. App'x 713, 716 (10th Cir. 2014) ("for an award of compensatory damages under the ADA or the [Rehabilitation Act], a plaintiff must show intentional discrimination"). To support its conclusion in *Marshall*—that a plaintiff must show intentional discrimination to recover compensatory damages under the ADA—the Circuit cited two cases: (1) *Barber ex rel. Barber v. Colorado Department of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) ("To recover compensatory damages under § 504, a plaintiff must

establish that the agency's discrimination was intentional.") and (2) *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1028–29 (10th Cir. 2001) ("Compensatory damages are available under the ADA, however, only if the plaintiff establishes that the employer not only technically violated § 12112(d)(2)(A) by asking a prohibited question, but also that by doing so it actually 'engaged in unlawful intentional discrimination.'" (quoting 42 U.S.C. § 1981a(a)(2)).

In 2018, our court discussed the same issue in *Hans v. Board of Shawnee County Commissioners*, No. 16-4117-DDC, 2018 WL 1638503, at *24–25 (D. Kan. Apr. 5, 2018), *aff'd*, 775 F. App'x 953 (10th Cir. 2019):

> The District of Colorado court has interpreted the Circuit's affirmation "to require a showing of intentional discrimination before a plaintiff may recover compensatory damages for mental or emotional injury [under Title II of the ADA]." *Ulibarri v. City & Cty. of Denver*, 742 F. Supp. 2d 1192, 1212 (D. Colo. 2010) (citing *Tyler v. City of Manhattan*, 118 F.3d 1400, 1403–04 (10th Cir. 1997). While the court does not agree that our Circuit has resolved this question explicitly, it does agree that the outcome in *Tyler* signals an approval—albeit implicitly—of our court's holding in *Tyler* that compensatory damages for mental and emotional injury were not available under Title II of the ADA without intentional discrimination.
>
> Taken together, these factors persuade the court to predict that our Circuit—if presented with the issue—would require intentional discrimination to recover compensatory damages under Title II of the ADA.

*Hans*, 2018 WL 1638503, at *24–25 (complete internal citations added).

Defendant also cites a more recent Tenth Circuit case to support his assertion—*Marks v. Colorado Department of Corrections*, 976 F.3d 1087, 1097 n.10 (10th Cir. 2020). In a footnote in *Marks*, the Circuit explained that "defendants also argue that . . . the claims for damages [under the ADA] would fail based on the absence of intentional conduct. Though this argument might ultimately prevail, we cannot address it here." *Id.* The footnote cites *Hamer v. City of Trinidad*, 924 F.3d 1093, 1108–09 (10th Cir. 2019) (suggesting that intentional discrimination is

required to recover compensatory damages under the ADA); then it cites *Hans v. Board of Shawnee County Commissioners*, 775 F. App'x 953, 956 (10th Cir. 2019) (unpublished) (concluding that intentional discrimination is required to recover compensatory damages under the ADA).

This cited authority suggests that the Circuit, if faced with the question, *would* require intentional discrimination to recover compensatory damages under the ADA.  However, the most recent Tenth Circuit opinion discussed above—*Marks v. Colorado Department of Corrections*— explicitly states that it "cannot address [whether claims for damages would fail based on the absence of intentional conduct] here."  *Id.*  The court reads that statement as acknowledgement from the Circuit that it still hasn't explicitly decided the issue.

Then, in a published 2021 opinion, the Circuit reversed a district court decision granting summary judgment against a plaintiff's *reasonable accommodation* claim under the ADA for damages.  *Brooks v. Colo. Dep't of Corr.*, 12 F.4th 1160, 1164, 1167 (10th Cir. 2021).  Again, the Circuit didn't explicitly address the issue.  But this opinion explicitly stated that "[a] claim for failure to make a reasonable accommodation *does not require a showing of discriminatory motive*" and it found plaintiff's injunctive claims moot.  *Id.* at 1167–1168 (emphasis added).  In sum, the Circuit reversed summary judgment against a Title II reasonable accommodation claim seeking solely compensatory damages.

This holding implicitly rejects the assertion that an ADA plaintiff must bring an intentional discrimination claim (or demonstrate discriminatory motive in his reasonable accommodation claim) to recover compensatory damages under Title II of the ADA.  Thus, it remains unclear how the Circuit would resolve the question.  But, in deference to *Brooks*, the

court evaluates plaintiff's reasonable accommodation claim for compensatory damages here on the premise that intentional discrimination is not a requisite.

### C. Eleventh Amendment Sovereign Immunity & the ADA

Defendant next argues that the Eleventh Amendment protects him from plaintiff's claim for monetary damages. Our Circuit recently summarized *United States v. Georgia*'s three-step framework to evaluate whether Eleventh Amendment immunity applies to a state prisoner's Title II claim for damages: First, the court must determine on a claim-by-claim basis "'which aspects of the State's alleged conduct violated Title II.'" *Brooks*, 12 F.4th at 1168 (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)). Second, if the court "concludes that some aspects of a state's [alleged] conduct violated Title II, it should then move on to determine whether that conduct violated the Fourteenth Amendment." *Id.* If the alleged conduct violated both the ADA and the Fourteenth Amendment, Congress's abrogation of the state's Eleventh Amendment immunity is constitutionally valid. *Id.* If the alleged conduct violated the ADA but not the Fourteenth Amendment, the court must proceed to step three. *Id.* At this final step the court must determine the following: "'insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" *Id.* (quoting *Georgia*, 546 U.S. at 159).

Defendant urges the court to decide this case at step one. He argues that his conduct didn't violate Title II because KDOC officials provided plaintiff with accommodations that allowed plaintiff meaningful access to washing facilities at HCF. Thus, he argues, no reasonable factfinder could find that he violated Title II of the ADA, so the court should grant summary judgment against plaintiff's claims. Below, the court addresses, first, whether plaintiff has

established a genuine dispute of material fact about any aspects of the state's alleged conduct violating Title II.

### 1.   Whether defendant's alleged conduct violated the ADA

Plaintiff argues that defendant violated Title II of the ADA when HCF officials failed to provide plaintiff with reasonable accommodations to shower at HCF.  Title II prohibits public entities—including state prisons—from discriminating against individuals with disabilities when providing government programs, activities, and services.  42 U.S.C. § 12132; *see also Brooks*, 12 F.4th at 1167 ("State prisons are public entities for purposes of Title II of the ADA.").  To establish a Title II violation, plaintiff must show:

(1) that he is a qualified individual with a disability;
(2) that he was "excluded from participation in or denied the benefits of some public entity's services, programs, or activities" and
(3) such exclusion or, denial of benefits, was by reason of his disability.

*Brooks*, 12 F.4th at 1167 (quoting *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999)); *see also J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016).

Defendant doesn't dispute that plaintiff is a qualified individual with a disability. Instead, he argues that plaintiff's claim fails on the second element.  "Based on the second element, courts have recognized two types of claims:  (1) exclusion from or denial of benefits and (2) discrimination."  *Albuquerque Pub. Schs.*, 813 F.3d at 1295 (citation and internal quotation marks omitted).  There are three ways to establish a discrimination claim:  "(1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation."  *Id.*  Plaintiff argues that defendant failed to provide him with a reasonable accommodation to shower and acted with deliberate indifference to his complaints, amounting to intentional discrimination.

### *Reasonable Accommodation*

Under the ADA, defendant must make reasonable accommodations for plaintiff to access the prison's facilities. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985). "Reasonable" means that defendant must provide "meaningful access"—not just physical access—to the facility or benefit defendant offers. *Id.* at 301–02; *see also Brooks*, 12 F.4th at 1170. The Tenth Circuit instructs that, under the ADA, "reasonable accommodation" means more than just "effective accommodation." *See Brooks*, 12 F.4th at 1172 (citing *US Airways, Inc. v. Barnett*, 535 U.S. 391, 399–400 (2002)). When a defendant's purported "reasonable accommodation" is "ineffective and an affront to [plaintiff's] dignitary interests" then it doesn't suffice under the statute. *Id.* at 1171–72.

### *Intentional Discrimination*

Plaintiff can show "intentional discrimination" through a showing of "defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Albuquerque Pub. Schs.*, 813 F.3d at 1298 (citations and internal quotation marks omitted). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* (citation, alteration, and internal quotation marks omitted). "The failure to act must be more than negligent and [it must] involve an element of deliberateness." *Id.* (citation and internal quotation marks omitted).

Defendant argues plaintiff hasn't shown defendant discriminated against him. Defendant's argument is twofold: first, he argues none of the HCF showers violated the ADA; then, defendant argues that HCF officials responded to and accommodated plaintiff's requests appropriately. Plaintiff disagrees. He argues that both the shower setup in the Central Unit

14

general population (where he was placed for a few months in 2017 and more than half of the year in 2018) and the shower set up in the Central Unit administrative segregation (where he was placed for 18 days in 2017) violated the ADA.  Plaintiff contends that defendant failed to provide him a reasonable accommodation and acted with deliberate indifference toward his disability and his requests for an accommodation.

At step one of *Georgia*'s three-part framework, the Supreme Court mandates inquiry to determine which aspects of the state's alleged conduct violated Title II.  To conduct this inquiry, the court breaks plaintiff's complaint (and defendant's alleged conduct) into two parts—plaintiff's ability to shower in the Central Unit general population, and his ability to shower in the Central Unit administrative segregation.

### a.  Central Unit General Population Shower

Plaintiff contends that the shower setup in the Central Unit general population didn't comply with the ADA.  While plaintiff resided in Central Unit general population, he used the "handicap shower area."  This shower had a bench, handrails, and a shower box allowing a person to shower while seated.

Plaintiff argues that he had "low-medium" custody status from 2014 to 2017; and thus, HCF officials should have transferred him to East Unit general population (where he could use the "shower chair").  Doc. 74 at 2.  But the uncontroverted facts show that plaintiff was "high medium custody level" at various times during his 2014 to 2018 stint at HCF.  Doc. 72-4 at 1 (Schnurr Aff. ¶ 4); *id.* at 5 (KDOC Custody Classification Display).  It's also uncontested that the East Unit wasn't capable of housing high medium or maximum custody inmates.  Doc. 72-4 at 1–2 (Schnurr Aff. ¶ 5).

Plaintiff requested an accommodation while subject to the Central Unit general population showers.  At the time of this request, plaintiff had no medical record requiring access to specific showers.  The supervisor of the Central Unit, Ms. Kroeker consulted these records and asked the HCF director of nursing, Mr. Mead, whether plaintiff safely could use the handicap shower area; and, Mr. Mead responded that plaintiff could.  Defendant argues that for these two reasons, Ms. Kroeker's response—denying plaintiff any accommodation or transfer—was reasonable.  He argues that where a prison facility doesn't have notice of a medical accommodation—like a written order from a medical provider—it is harder for a prisoner to demonstrate that a refusal to provide that accommodation amounts to intentional discrimination.

The court agrees with defendant, plaintiff fails to present a genuine dispute of material fact that HCF intentionally discriminated against him when it denied his request.  *See Albuquerque Pub. Schs.*, 813 F.3d at 1298 (deliberate indifference requires defendant has knowledge that it's "substantially likely" defendant is violating federal right, and defendant still fails to act on that likelihood).  The uncontroverted facts show that HCF officials considered plaintiff's request, investigated the necessity of the accommodation, and found nothing in plaintiff's medical record warranting it.  Plaintiff presents no evidence that an HCF official knew it was substantially likely he or she was violating plaintiff's rights under the ADA.  Thus, plaintiff fails to present a genuine dispute of material fact that defendant intentionally discriminated against him.

After plaintiff submitted the formal grievance in 2017, the Secretary of Corrections recommended working with plaintiff to accommodate his disability, and HCF transferred plaintiff to the East Unit general population where he had access to a shower chair.  Plaintiff preferred showering in the East Unit.  He preferred living in the East Unit for many reasons—in

16

his words, the East Unit provided "less . . . restrict[ed] housing [where] you can move around more, more yards, more privileges, more everything."  Doc. 72-5 at 47 (Garcia Dep. 151:17–23). But plaintiff couldn't always reside in the East Unit because at times, KDOC classified him as a higher security risk.  When classified as medium-high risk, he had to return to the Central Unit. Then, plaintiff had to use the less desirable shower in the Central Unit.  But plaintiff used that "handicap shower area" in the Central Unit general population for months without complaining. And he testified that in this shower, he could sit on the bench, take off his prosthetic, and shower while seated.

The record shows that HCF provided plaintiff meaningful access to shower in the Central Unit general population.  Thus, plaintiff also fails to present a genuine dispute of material fact whether defendant provided him a reasonable accommodation while he was housed in the Central Unit general population.  The court next addresses the shower in administrative segregation.

### b.  Central Unit Administrative Segregation Shower

Again, plaintiff's right leg is amputated below the knee.  He wears a prosthetic on that leg.  To shower, he needs to sit down, take off his prosthetic, and shower while seated. Administrative segregation in the Central Unit wasn't equipped with any seated showers.  While plaintiff was placed in administrative segregation, HCF officials offered him a plastic chair to put in the shower.  Doc. 70 at 3 (Pretrial Order  ¶ 2.a.xi.); Doc. 72-5 at 42 (Garcia Dep. 144:20–25).  Plaintiff didn't take them up on their offer, and instead washed himself using the sink in his cell.  Plaintiff testified that he didn't think the plastic chair was adequate because it wasn't a "shower chair."  *Id.* at 44 (Garcia Dep. 146:10–24).  He was worried that the plastic chair would "slip around."  *Id.*

Defendant argues that plaintiff could've used the plastic chair.  Defendant also asserts that because plaintiff could (and did) still wash himself in the sink, during his 18-day stint in administrative segregation, defendant's actions didn't amount to intentional discrimination. Instead, defendant argues, this alleged conduct, at most, amounts to negligence and not intentional discrimination.

To support this conclusion, defendant asserts that "cases involving an inmate who misses showering for a brief period of time due to a prison not providing a request accommodation" support a conclusion that the prison's conduct "amounts to mere negligence rather than intentional discrimination."  Doc. 72 at 13.  Defendant cites two cases—*Crockwell v. Dart*, No. 15 CV 825, 2016 WL 4493456, at *1 (N.D. Ill. Aug. 26, 2016) (placing inmate using wheelchair in isolation, where he couldn't shower for *three days* amounted to negligence, not intentional discrimination; but, placing the same inmate in cell without an accessible bathroom for *nearly a month* qualified as intentional discrimination) and *Strominger v. Brock*, 592 F. App'x 508, 511 (7th Cir. 2014) (prison's failure to provide inmate using wheelchair wall mounted shower chair amounted to negligence, not deliberate indifference).  Neither case is overly persuasive for this case's context.

Plaintiff's alleged inability to use a shower for 18 days falls somewhere between the *Crockwell* plaintiff's inability to shower for three days (negligence) and the same plaintiff's inaccessible toilet for nearly a month (intentional discrimination).  In *Strominger*, the Indiana Department of Correction provided the inmate plaintiff with a "portable, plastic shower chair that he considered unstable[,]" so he didn't shower for 34 days until the prison installed "a wall-mounted shower chair[.]"  *Strominger*, 592 F. App'x at 510.  The Seventh Circuit explained that "the record [about the shower chairs] suggests at most not that [plaintiff] was denied life's

necessities but only that he did not receive the level of accommodation that he wished.  In both segregation units, officials responded to [plaintiff's] complaints by discussing the issue with him, investigating possible solutions, and eventually installing wall-mounted shower chairs." *Id.* at 511.  HCF officials can't say—based on this case's summary judgment facts—they made similar attempts to investigate and solve plaintiff's problem while he was in administrative segregation.

Here, KDOC officials never offered plaintiff a portable plastic shower chair; they never installed a wall-mounted shower chair.  They offered him a regular plastic chair.  Plaintiff testified that when he entered administrative segregation, he informed an officer that he needed a handicap accessible shower, and they told him that it wasn't handicap accessible.  Doc. 72-5 at 41–42 (Garcia Dep. 143:15–144:25).  Plaintiff then didn't attempt to shower, and instead washed himself in his sink.  Plaintiff's decision not to shower demonstrates a dispute of material fact that defendant provided him with a reasonable accommodation.  *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016) (recognizing that if "[a]n accommodation . . . [is] so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him," then it's not a reasonable accommodation).

It is undisputed that HCF officials offered plaintiff a "normal chair" to use in a non-handicap shower for his 18 days in administrative segregation.  Still, the court can't resolve this issue—whether defendant reasonably accommodated plaintiff—as a matter of law.  *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1050–51 (10th Cir. 2017) ("'Whether an accommodation is reasonable under the ADA is a mixed question of law and fact'" (quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1123–24 (10th Cir. 2004))); *Brooks*, 12 F.4th at 1170 ("district court erred in concluding . . . it could resolve [if adult diaper for plaintiff with ulcerative colitis was a reasonable accommodation] as an issue of law").

A reasonable jury, based on this record, could conclude that the plastic chair and ability to wash in the sink did not provide plaintiff with meaningful access to shower.  Just as true, a reasonable jury could conclude that these options did provide plaintiff meaningful access to shower; or that it was a reasonable accommodation for the 18-day duration and considering the security risk plaintiff posed.  But that's a jury question, not a summary judgment decision.  Thus, the court concludes, plaintiff has presented a genuine dispute of material fact whether defendant—by subjecting plaintiff to the shower conditions in administrative segregation— violated Title II of the ADA.

In sum, the court concludes plaintiff hasn't presented a triable issue whether the Central Unit general population shower violated Title II.  But he has presented a triable issue about whether defendant failed to provide a reasonable accommodation to shower while he was in the Central Unit administrative segregation.  Thus, the court must proceed to step two of the three step process for this remaining claim.

### 2.   Whether defendant's alleged conduct violated the Fourteenth Amendment

At step two, the court must determine whether the conduct presenting a triable issue on the claim under Title II of the ADA also violates plaintiff's Fourteenth Amendment rights. "Notably, the Supreme Court has made clear that the Fourteenth Amendment incorporates against the states the Eighth Amendment's prohibition against cruel and unusual punishment." *Brooks*, 12 F.4th at 1168.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and internal quotation marks omitted).  "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take

20

reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).  To establish an Eighth Amendment claim based on conditions of confinement, a prisoner must show that prison officials acted with deliberate indifference.

Deliberate indifference consists of both objective and subjective components.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  To prevail on the objective prong of the test, the prisoner must show that "'the harm suffered is "sufficiently serious" to implicate the Cruel and Unusual Punishment Clause.'"  *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)).  On the subjective component, "the prisoner must show that [defendant] 'knew [the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it.'"  *Id.* (quoting *Kikumura*, 461 F.3d at 1293).

Plaintiff fails to present a triable Eighth Amendment claim on the objective component. The alleged conduct presenting a triable issue on violating Title II—18 days without the ability to sit safely while showering but with the ability to wash in the sink—isn't harm that implicated the Cruel and Unusual Punishment Clause.  *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991) (prisoner must demonstrate a "sufficiently serious" deprivation amounting to "unnecessary and wanton infliction of pain" to meet the Eighth Amendment's objective component) (citation and internal quotation marks omitted);  *see also Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (Eighth Amendment claim presented where prisoner confined to cells covered in feces and blood for 6 days); *Al-Turki v. Robinson*, 762 F.3d 1188, 1192–94 (10th Cir. 2014) (Eighth Amendment claim presented where prisoner collapsed, vomited, and feared impending death for several hours before nurse provided medical treatment).  *But see, e.g.*, *Grissom v. Roberts*, 902 F.3d 1162, 1173–75 (10th Cir. 2018) (no Eighth Amendment claim where prisoner served 20 consecutive

years in solitary confinement with regular access to reading materials, medical care, and exercise).

Temporary conditions typically don't meet the objective standard to qualify as sufficiently serious deprivation.  *See, e.g.*, *Trammell v. Keane*, 338 F.3d 155, 164 (2d Cir. 2003) (no Eighth Amendment claim presented where prisoner deprived of toilet paper for one week and of clothing, blanket, and mattress for several weeks); *Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (no Eighth Amendment claim presented where prisoner deprived of working toilet and of lower bunk when cell flooded because inconveniences only temporary).

While plaintiff has presented a genuine dispute of material fact whether defendant afforded him a reasonable accommodation to shower in administrative segregation, the court has no difficulty concluding that plaintiff presents no triable Eighth Amendment claim.  The deprivation asserted here—18 days without a safe shower seat but mitigated by access to wash in a sink—is more like *Grissom*, *Trammell*, and *Dellis* than it is *Taylor* and *Al-Turki*.  Thus, the court must proceed to the final *Georgia* step to determine whether the purported abrogation of sovereign immunity is valid.

### 3.  Whether Congress validly abrogated sovereign immunity for this alleged conduct

Because defendant's alleged failure to provide a reasonable accommodation falls within the scope of Title II but outside of the scope of the Eighth Amendment, the court must proceed to step three.  At this step, the court must decide "whether Congress's purported abrogation of sovereign immunity" for the state's alleged conduct is valid.  *See Georgia*, 546 U.S. at 159.

The Eleventh Amendment generally bars suits against states and their agencies based on their sovereign immunity.  *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015).  "This immunity extends to arms of the state and to state officials who are sued

22

for damages in their official capacity," as defendant is here.  *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).  "Nonetheless, 'Congress may . . . abrogate [state sovereign] immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment.'"  *Guttman v. Khalsa*, 669 F.3d 1101, 1111 (10th Cir. 2012) (quoting *Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721, 726 (2003)).[6]  Step three of the *Georgia* analysis asks the court to apply "the congruence and proportionality test set out by the Supreme Court in *City of Boerne v. Flores*" to determine whether Congress validly abrogated state sovereign immunity.  *Brooks*, 12 F.4th at 1168 (citing *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)); *see also Guttman*, 669 F.3d at 1116–17 (holding that Congress didn't validly abrogate state sovereign immunity with respect to Title II ADA claim about revoked medical license).

Neither party's briefing addresses this abrogation question.  Defendant only briefed step one of *Georgia*'s three-part framework.  Doc. 72 at 16–17 (reciting the three-step framework, then arguing that "the [c]ourt need not proceed past the first step" because "no reasonable factfinder could find a violation of Title II of the ADA.").  Plaintiff argued in his reply that "[t]he [Eleventh] [A]mendment cannot protect [defendant] because [he] did act with deliberate indifference to my disability and safety."  Doc. 74 at 2.  But plaintiff failed to argue that

---

[6]     Section 1 of the Fourteenth Amendment provides:  "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  Under Section 5 "Congress shall have power to enforce, by appropriate legislation, the provisions of this article."  *Id.*  "The enforcement prerogative granted by § 5 gives Congress broad authority, such that it may enact 'prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct,' so long as these measures do not work a substantive change in the governing law."  *Guttman*, 669 F.3d at 1112 (quoting *Hibbs*, 538 U.S. at 727–28).  "The ADA is one such piece of prophylactic legislation."  *Id.*

Congress didn't validly abrogate state sovereign immunity as applied to his Title II claim.  Thus, the court declines to engage in sovereign immunity abrogation analysis—"a highly detailed inquiry."  *Havens v. Colo. Dep't of Corrs.*, 897 F.3d 1250, 1256 (10th Cir. 2018).

As our Circuit instructs, the "onus is on [plaintiff] to demonstrate that [defendant's] assertion of Eleventh Amendment sovereign immunity does not bar his Title II claim."  *Id.* at 1260–61 (citing *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008) (cautioning that we must "bear[ ] in mind that the party asserting jurisdiction bears the burden of proving that sovereign immunity has been waived"); then citing *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227–28 (10th Cir. 2010) (further citations omitted)).  Plaintiff bears the consequence of the parties' failure to address the issue.  *See id.* at 1256 (affirming summary judgment where district court held that "the party with the burden of proof on the abrogation issue must bear the consequences of the parties' failure to adequately develop it") (internal quotation marks and citation omitted)).  Thus, the court concludes, defendant properly has invoked Eleventh Amendment sovereign immunity against plaintiff's Title II damages claim.  This conclusion means the court lacks jurisdiction to decide plaintiff's damages claim, so the court dismisses that claim without prejudice.

## IV.    Conclusion

Plaintiff alleges that he was unable to shower for 18 days in administrative segregation at Hutchison Correctional Facility.  He presents a triable issue whether defendant violated Title II of the ADA—and failed to provide him a reasonable accommodation—when HCF officials offered plaintiff a plastic chair to put in a shower equipped for standing.  But defendant can invoke Eleventh Amendment sovereign immunity, and thus, plaintiff's claim for damages fails against this defendant.  Also, plaintiff's claims for injunctive relief are now moot because he

moved from HCF to a different facility—a facility, he concedes, that meets the ADA's requirements.  For these reasons, the court grants summary judgment against plaintiff's claims for injunctive relief and dismisses plaintiff's claim for damages based on lack of subject matter jurisdiction.  These rulings conclude all of the claims at issue in the case.  The court thus directs the Clerk of the Court to enter Judgment for defendant on claims for injunctive relief and close the case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Summary Judgment is (Doc. 71) granted in part as explained in this Order.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff's claim for damages is dismissed without prejudice.

**IT IS SO ORDERED.**

**Dated this 2nd day of March, 2023 at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**